UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
```
JASPER WALTER JONES,

            Plaintiff,

    - against -

WESTCHESTER COUNTY DEPARTMENT OF
CORRECTIONS MEDICAL DEPARTMENT,
WARDEN AMICUCCI, and MS. JUNE YOZZO,
Head Administrative Liaison,

            Defendants.

```
-------------------------------------------------------------x
```

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/08
```

07 Civ. 3019 (CM)

### DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

McMahon, J.:

I.    Introduction

    This case involves a <u>pro se</u> prisoner's claim that the Westchester County Department of Corrections and some of its employees violated his Eighth Amendment right to be free from cruel and unusual punishment. Before the Court is the Defendants' pre-answer motion to dismiss the Complaint.

    For the reasons discussed below, Defendants' motion is granted as to Warden Amicucci, but otherwise denied.

1

II.  Background

The allegations in the complaint and its appended materials are as follows.

On February 28, 2006, Plaintiff Jasper Walter Jones came into the custody of the Westchester County Department of Corrections as a pretrial detainee. At the time, he had a documented degenerative arthritic condition afflicting his hip joints. Compl. ¶ IV (Statement of Claim).

From the time of his intake, he complained to medical personnel about the constant pain he suffered in his hips. For more than six months, these complaints were addressed with over-the-counter pain medication. Compl. Attached Information, at 1. However, the pain continued, and in August 2006 Plaintiff was referred to an orthopedic specialist.

The specialist took X-rays and determined that the cartilage between Plaintiff's femur and hip socket had worn almost completely away, so that his bones were rubbing together, causing pain. Id. at 4. Plaintiff was scheduled for the "necessary" surgery to replace his hip joints.

Four months passed from the time Plaintiff was diagnosed and the date the surgery was finally scheduled to take place, January 3, 2007. Plaintiff's sentencing was moved into March 2007 in order to allow Plaintiff time to have his surgery and recover before being transferred from County to State custody. Compl. (Attached letter of attorney Ron Stokes). In the week leading up to the procedure, Plaintiff took blood tests and other preparatory measures as instructed by medical personnel.

On January 3, 2007, Plaintiff arrived at Westchester Medical Center and was being prepped for his surgery. As he was being fitted with his intake bracelet, a call came in from the Department of Corrections, canceling the procedure with just minutes to spare, despite being on

2

notice that Plaintiff was being scheduled for surgery for nearly four months. Plaintiff, incensed, sought an explanation.

He was eventually informed by Defendant June Yozzo that his surgery was deemed "non-urgent" and therefore "elective." Compl. Attached Information, at 2. Plaintiff alleges that Ms. Yozzo had administrative authority to label a surgical procedure "elective," and that she did so in his case. Compl. Mem. at 5. Plaintiff also alleges that, at the time he confronted her, Ms. Yozzo indicated that Jones was to be sentenced soon and transferred to another facility, and told him he could "take up [his] medical concern in the New York State Department of Corrections." Compl. Additional Information, at 2.

Plaintiff complained through the administrative channels, where it appears that Plaintiff was informed that he would be given a back brace and physical therapy instead of surgery. Dissatisfied, and having exhausted his administrative remedies, Plaintiff filed this action pro se on March 2, 2007. Compl. at 1. He alleged that Defendants were deliberately indifferent to his serious medical need, and requested an order directing Defendants to authorize his surgery. Compl. ¶ V. (Relief).

On October 12, 2007, the Defendants filed a motion to dismiss, arguing, inter alia, that Jones' claim is without merit and that the named Defendants are entitled to qualified immunity. Plaintiff filed his opposition December 27, 2007, where he additionally requests "recompense," which this court construes liberally as damages under section 1983 for a violation of his constitutional rights. Defendants have not filed a reply.[1]

---

[1] Plaintiff apparently had his surgery while in State custody, so his request for injunctive relief is moot.

3

III.  Discussion

   a. Rule 12(b)(6) standard

On a motion to dismiss, the court must accept all factual allegations in the Complaint as true. In re Xethanol Corp. Sec. Litig., 2007 WL 2572088, at *2 (S.D.N.Y. Sept. 7, 2007) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007)). The old Conley v. Gibson standard,[2] which held that dismissal was inappropriate "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," was recently "retired" by the United States Supreme Court in Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The Twombly Court held that, "While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal citations and quotations omitted). For a plaintiff to survive a motion to dismiss, his "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." Id. at 1965 (citations omitted).

In a post-Twombly decision, the Second Circuit stated, "The [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

In another post-Twombly case, the Supreme Court specifically addressed a pro se petitioner's pleading burden in a case alleging deliberate indifference to a serious medical

---

[2] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

condition. Erickson v. Pardus, 127 S. Ct. 2197 (2007). In Erickson, a pro se prisoner filed suit against his corrections facility, alleging that defendants terminated a prescribed treatment for his liver condition, causing serious harm. Defendants moved to dismiss, arguing that plaintiff was removed from the treatment because one of his prescribed syringes had gone missing, which indicated drug use. Under state prison regulations, drug use disqualifies a prisoner from receiving the liver treatment at issue.

A magistrate judge recommended dismissing the complaint, as it was found that Plaintiff had failed to plead "substantial harm." The District Court adopted that recommendation, and on appeal the Tenth Circuit affirmed.

The Supreme Court granted review, because "The holding [below] departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure. . . ." Id. at 2198. The Court stressed that "Rule 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 2200 (quoting Fed. R. Civ. P. 8(a)(2)). The Court also held that "[the lower courts'] departure from the liberal pleading standards set for by Rule 8(a)(2) is even more pronounced . . . because petitioner has been proceeding . . . without counsel. A document filed pro se is to be liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976).

As Erickson was decided in the same Term as Twombly, it suggests that a pro se litigant remains entitled to have his pleadings liberally construed, and that as long as the facts alleged are at least plausible, his complaint should not be dismissed on a 12(b)(6) motion if those facts state a claim for relief. In particular, labeling an allegation "conclusory" does not justify disregarding its legal effect if it were believed.

5

b. <u>Deliberate indifference</u>

To state a section 1983 claim, a plaintiff must allege a violation of his constitutional or statutory rights by a person acting under the color of state law. <u>See</u> 42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment. The Eighth Amendment "imposes a duty on prison officials to ensure that inmates receive adequate medical care." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279 (2d Cir. 2006) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). In <u>Salahuddin</u>, the Second Circuit explained in detail the conditions that must be met to show that a prison official has violated this duty. <u>See generally</u> <u>Manley v. Mazzuca</u>, 2007 WL 162476, at *4-5 (S.D.N.Y. Jan. 19, 2007).

First, the deprivation of care must be "sufficiently serious." <u>Id.</u>; <u>see also</u> <u>Farmer</u>, 511 U.S. at 825. This requirement is objective, and is analyzed using a two-part inquiry. Initially, the Court must determine whether the inmate was actually denied adequate care. <u>See</u> <u>Salahuddin</u>, 467 F.3d at 279-80. Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is "reasonable." <u>Id.</u> at 280 (citing <u>Farmer</u>, 511 U.S. at 844-47).

Second, if the care provided was unreasonable, courts must inquire as to whether that inadequacy was "sufficiently serious." <u>Id.</u>; <u>see also</u> <u>Smith v. Carpenter</u>, 316 F.3d 178, 185-86 (2d Cir. 2003). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" <u>Salahuddin</u>, 467 F.3d at 280 (quoting <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998)). This analysis requires an examination both of the harm already caused

to the prisoner and the likelihood that harm will continue or increase without additional treatment. See id. Thus, the "seriousness" inquiry will vary based on the nature of the treatment provided and the claim asserted by the inmate. See Salahuddin, 467 F.3d at 280.

The second component is subjective, and requires that the prison official involved act with a "sufficiently culpable state of mind." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). This is satisfied by a showing that the official acted with "deliberate indifference" toward Plaintiff's health, a state of mind akin to criminal recklessness. Id. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280.

    c. Plaintiff has stated a claim

Plaintiff has sufficiently alleged both the objective and subjective components.

    i. Objective component

        1. Adequate care

I cannot say, as a matter of law, that Defendants' last-minute refusal to allow Plaintiff to have long-prescribed surgery, substituting instead a back brace and physical therapy, constituted "adequate" or "reasonable" medical care.

In support of his allegation that his surgery was necessary, Plaintiff appends to his complaint the diagnosis of an orthopedic specialist, who determined that the surgery was "necessary," and the only way available to alleviate Plaintiff's excruciating chronic pain.

Defendants, on the other hand, submit their own medical records, including the diagnosis of a Dr. Bailey, who determined after a conference call with the specialist—a call that took place

one day before Plaintiff was scheduled for surgery—that the surgery was neither "urgent" nor "emergent." Defendants argue that, on the basis of Dr. Bailey's diagnosis, a disagreement existed about the proper course of treatment, so that following the one doctor rather than the other was an objectively reasonable thing to do.

However, Defendants' reliance on this *evidence* is completely misplaced in a pre-answer motion to dismiss the complaint. Defendants have not asked the court to convert this to a motion for summary judgment, and I will not do so. On a motion to dismiss a pro se complaint, I consider only the complaint and the materials appended to it; I construe the pleadings liberally, and I draw all inferences in the Plaintiff's favor.

Plaintiff alleges that he was scheduled for "necessary" surgery to alleviate chronic and extreme pain, and provides support in the material he attaches to his pleading for his allegation of necessity. Plaintiff alleges facts tending to show that Defendants denied him this surgery for the sole—and manifestly improper—reason that they wished to shift the cost to another agency. Plaintiff's detailed factual allegations are not "implausible," nor are they "conclusory." Indeed, they are shocking. In light of these allegations, which I must credit, I cannot conclude that Defendants' decision to substitute of a back brace for surgery offered Plaintiff either adequate or reasonable care as a matter of law.[3]

---

[3] Even if I were to consider Defendants' proffered evidence (which I do not), it would still fail to establish adequate medical care as a matter of law. The record reveals that (1) Dr. Bailey is not an orthopedist; (2) Dr. Bailey saw Plaintiff only very briefly, on the day before the surgery was scheduled; (3) Dr. Bailey agreed that the surgery was necessary to alleviate Plaintiff's pain, and disagreed only as to when the surgery should take place. Based on the timing of the refusal—i.e., just weeks before Plaintiff was scheduled to be transferred to another facility, which would then be forced to shoulder the cost—I can infer that Dr. Bailey's last-minute "diagnosis" was made for the sole purpose of stopping the surgery (due to take place the very next morning), in order to shift the cost of a necessary surgery onto the next institution to house Mr. Jones.
    Drawing all of these inferences—which do not reach beyond the plausible, see Twombly—I would not conclude that the Defendants' reliance on the Bailey diagnosis—which is less a diagnosis that a statement that "Plaintiff can continue in pain for now (and until his transfer)"—constituted reasonable medical care *as a matter of law.*

2. Serious condition

As for the second Salahuddin inquiry, drawing all of the inferences in Plaintiff's favor, one could conclude that the alleged unreasonable care caused Plaintiff to suffer, or at least exacerbated, a "serious medical condition." Plaintiff alleges that his hips caused him "chronic and extreme pain," and that this pain would have been alleviated if he had been given reasonable care (i.e., the recommended, "necessary" hip replacement surgery). On a motion to dismiss I must accept this allegation as true, as it is not implausible, and cannot be labeled "conclusory," see Erickson, 127 S. Ct. at 2200. Therefore, Plaintiff has adequately pleaded this aspect of the so-called "objective" requirement.

The objective requirement of the deliberate indifference test has often been satisfied when a Plaintiff suffering a degenerative hip condition was denied hip replacement surgery as treatment. The case of Cain v. Huff, 117 F.3d 1420 (6th Cir. 1997) (unpublished opinion), presented nearly identical facts. There, the plaintiff was a prisoner who had long suffered arthritis of the hips. He complained of the pain it caused him, and he was eventually referred to an orthopedic specialist. As here, the orthopedist took X-rays, and found bone on bone contact at the hip joint, and recommended hip replacement surgery. Also as here, Plaintiff was denied that surgery, and sought relief in court. The Sixth Circuit indicated that this evidence to this effect would satisfy the objective element of a deliberate indifference claim even on a motion for summary judgment. Id. at *3. Undisputed allegations to the same effect clearly suffice to survive a pre-answer motion to dismiss. See also, Williams v. Wright, 162 Fed. Appx. 69 (2d Cir. 2006) (unpublished) (objective element "not an issue" when plaintiff suffered degenerative hip condition that necessitated surgery).

9

### ii. *Subjective element*

As to the subjective component of the <u>Salahuddin</u> test, Plaintiff alleges that Defendants unreasonably refused the surgery, despite being aware of the seriousness of Plaintiff's condition, for the sole purpose of shifting the cost of his care to another institution. Plaintiff alleges that Ms. Yozzo made statements to this effect, and the timing of the denial renders Plaintiff's allegation of improper motive plausible. If credited, Plaintiff's allegation is sufficient to establish the culpable mental state necessary to satisfy the subjective element of the <u>Salahuddin</u> test. <u>See</u> <u>Chance</u>, 143 F.3d at 703 ("In certain instances, a [defendant] may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan.") (internal citation omitted), <u>id.</u> at 704 ("This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment."). Indeed, it should go without saying that, if Plaintiff's allegations prove true, he will have established constitutional indifference.

Whatever the ultimate merits of Plaintiff's claim, Defendants have jumped the gun by filing a pre-answer motion to dismiss. Many of the material questions in this case, such as, "What care is reasonable in these circumstances," and "What was the Defendants' mental state when the surgery was refused," are not ripe for adjudication on the basis of the complaint and its appended materials. "It may become clear, at summary judgment or at some later stage in the litigation, that these claims are not adequately supported. But at the 12(b)(6) stage, we must accept the plaintiff's allegations as true . . . ". <u>Id.</u> at 703.

### d. Qualified immunity

Likewise, Defendants completely misplace their argument for qualified immunity.

First, Defendants have violated my individual practices by raising this issue as part of a pre-answer motion to dismiss, and otherwise failing completely to adhere to my detailed and quite specific instructions for the prompt adjudication of the qualified immunity issue. See Individual Practices of Judge McMahon (Revised 2/3/06), Rule 3.C. ("Qualified Immunity: Special Rules"). "Failure to proceed in accordance with these rules constitutes a waiver of the right to move for judgment on the ground of qualified immunity prior to trial." Id.

Even if this were not the case, Defendants argument for qualified immunity makes little sense here. The whole thrust of Jones' allegations is that the Defendants, with a subjectively culpable mental state, denied him surgery. When credited, this allegation rules out the argument that Defendants reasonably believed they were not being deliberate indifferent—unless Defendants have an extraordinary tolerance for cognitive dissonance. McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (on prison official's Rule 12(b)(6) motion to dismiss, "To establish their qualified immunity defense, the defendants must show that it was objectively reasonable for them to believe they had no acted with the requisite deliberate indifference.") (internal citations and quotations omitted). It is not reasonable for a county official to believe that saving money will excuse withdrawing needed and prescribed medical care from an inmate.

Although dismissal pursuant to Rule 12(b)(6) is clearly available in an appropriate case, Defendants' theories are ill-suited to adjudication as a matter of law in the absence of some factual record beyond the complaint and its appended materials. Jones adequately alleges facts that, if believed, state a section 1983 violation. Therefore, I will not dismiss Jones' complaint on the merits.

11

d. The county

Defendants have also moved too soon with respect to Plaintiff's Monell claim against Westchester County. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978).[4]

The Second Circuit has established a two-prong test that a section 1983 plaintiff must pass before recovering from a municipality. See generally Moray v. Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (Parker, J.) (internal citations and quotations omitted throughout). First, the plaintiff "must prove the existence of a municipal policy or custom" that caused his injuries. Id. Second, the plaintiff must establish a causal connection between the policy and the alleged civil rights violation. Id.

To satisfy the first prong of the test on a motion to dismiss, Jones must allege the existence of one of the following: (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." Id.

Construing the pleading liberally in favor of the pro se petitioner, I find that Jones has stated a claim. Plaintiff has not yet had an opportunity to take the discovery that will be needed to flesh out any Monell claim. If Plaintiff's case turns out to be unique, the Monell claim will not survive summary judgment or a directed verdict. However, if the evidence shows that the denial

---

[4] The Department of Corrections Medical Department is a County agency, so the proper party Defendant is Westchester County. Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.") (citing Fanelli v. Town of Harrison, 46 F. Supp. 2d 254 (S.D.N.Y. 1999)).

12

of Jones' surgery was part of a custom of denying medical procedures to pre-trial detainees who are soon to be transferred, the County might well be liable under Monell. This aspect of the motion is premature.

e. Housecleaning

Defendants have identified two issues that are ripe for adjudication.

   *i. Personal involvement*

First, Defendants are correct that Plaintiff has failed to plead personal involvement on the part of Warden Amicucci. Personal involvement is a prerequisite to an award of damages under section 1983. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

The complaint does not allege that the Warden's played any role in the alleged deprivation of Plaintiff's constitutional rights. Even after Plaintiff was put on notice of this deficiency by the Defendants' motion, Plaintiff failed to include in his opposition any additional facts that would tie the Warden to this series of events. Plaintiff's assertions of the Warden's supervisory role over Ms. Yozzo are insufficient, as it is well-settled that *respondeat superior* does not apply in section 1983 actions. Hayut v. State University of New York, 352 F.3d 733, 753 (2d Cir. 2003) ("It is well settled, however, that the doctrine of *respondeat superior* standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity.") (citing Monell, 436 U.S. at 691). Therefore, the Complaint is dismissed as to Warden Amicucci. Dismissal is without prejudice.

On the other hand, Plaintiff has alleged with the requisite specificity Defendant Yozzo's role. In particular, Plaintiff alleges that Ms. Yozzo made the final decision not to let Plaintiff

13

have his hip replacement surgery, and that she personally, and with deliberate indifference to his suffering, put the County's financial concerns ahead of his medical needs. If credited, this allegation suffices to state Yozzo's personal involvement in the alleged deprivation.

### ii. Mootness

Second, Defendants are correct that Plaintiff's request for an order compelling authorization of his surgery is moot. First, Plaintiff is no longer in the custody of Westchester County. Second, he has received the necessary surgery. Plaintiff's claim for injunctive relief is therefore dismissed.

### IV. Conclusion

The motion to dismiss is granted as to Warden Amicucci and is otherwise denied. Plaintiff's claim for injunctive relief is dismissed as moot.

This constitutes the decision and order of the Court.

Dated: May 6, 2008

_____
U.S.D.J.